# Ronald Stanfield, etc., et al.

## v.

# Tracy Delmar Peregoy

Record No. 920916

April 16, 1993

Present: All the Justices

340

*J. Christopher Ide* for appellants.

*Karen S. Snow, Assistant City Attorney (Philip G. Sunderland, City Attorney*, on brief), for appellee.

JUSTICE COMPTON delivered the opinion of the Court.

The sole issue in this appeal is whether the trial court erred in ruling that a city employee, operating a city truck and spreading salt during a snowstorm, is protected by the doctrine of sovereign immunity from a negligence action arising from a collision between the truck and another vehicle.

Appellants Ronald Stanfield, a minor, and Sharon Stanfield, his mother, jointly sued the City of Alexandria and appellee Tracy Delmar Peregoy seeking recovery in damages. According to plaintiffs' allegations, they were injured while riding on a bus that collided with a city-owned truck negligently operated by Peregoy, a city employee acting within the scope of his employment.

Responding, the defendants filed a special plea of sovereign immunity. They asserted that the accident occurred when Peregoy was operating "a combination snow plow/salt truck" and "was spreading salt on the streets during a snow emergency." The defendants contended that "the maintenance of streets free from ice and snow is a governmental function." Accordingly, the defendants asserted, the City is immune from liability in tort based upon its employee's negligent performance of this function. The defendants also contended that because the employee was performing a governmental function requiring the exercise of judgment and discretion, he likewise is immune from liability in this action.

In support of its plea, the defendants filed a memorandum of law reciting facts relevant to the issue presented. Later, the trial court considered oral argument of counsel on the plea at which time the plaintiffs conceded the City is immune from any liability based upon the employee's negligence. In a subsequent letter opinion, the trial court stated that it assumed there had been a stipulation "as to the facts alleged by the City" because the "Plaintiffs [had] not objected" to such factual recitations.

Sustaining the plea, the court noted that the defense of sovereign immunity applies only to an employee's acts of judgment and discretion necessary to the performance of the governmental function. The court ruled that the employee is immune from suit because his driving of the vehicle "was an integral part of the governmental function and did involve 'special risks arising from the governmental activity,' " quoting *Heider* v. *Clemons*, 241 Va. 143, 145, 400 S.E.2d 190, 191 (1991). The court concluded, "Since the facts do not show and Plaintiffs have not alleged gross negligence the [plea] will be sustained." The plaintiffs appeal as to the defendant Peregoy only from the March 1992 order dismissing the action with prejudice.

The facts in the record relied upon by the trial court show that the City "was hit" with a major snowstorm during the early morning of the day in question. Defendant Peregoy was an employee of the City's Department of Transportation and Environmental Services

qualified to operate the City's "snow emergency removal equipment."

At the time, the defendant had completed a special course of instruction given to the employees selected to operate the equipment. These drivers were required to obtain a chauffeur's license, to learn defensive driving techniques, and to complete a minimum of 16 hours of on-the-job training. In performing their emergency duties, the selected employees initially had to determine whether a particular street needed to be salted, plowed, or a combination of both. Based on the employee's assessment of the street conditions, the employee had to decide whether to spread salt on the entire street, or only a section, and had to ascertain the amount of salt to be spread.

Snow began to fall on the day of the accident about 6:00 a.m. and ended near 10:00 p.m., accumulating between four and eight inches in the area. At the time of the accident, near 7:00 a.m., the City emergency personnel mainly were concerned about ice forming on the streets due to low temperatures.

Prior to the accident, the defendant had spread salt along three streets. As he was salting a fourth street, he approached an intersection and, faced with a stop sign, attempted to stop his truck. According to defendant, his truck skidded on ice into the intersection and collided with the bus carrying the plaintiffs.

We have developed a four-factor test to be employed when we engage in the necessary "line-drawing" exercise to determine if government employees are entitled to immunity. The factors to be considered include: (1) the nature of the function the employee performs; (2) the extent of the governmental entity's interest and involvement in the function; (3) the degree of control and direction exercised by the governmental entity over the employee; and (4) whether the alleged wrongful act involved the exercise of judgment and discretion. *Lentz* v. *Morris*, 236 Va. 78, 82, 372 S.E.2d 608, 610 (1988); *Messina* v. *Burden*, 228 Va. 301, 313, 321 S.E.2d 657, 663 (1984). In the present case, we are concerned with the fourth factor only.

The plaintiffs argue that the defendant is liable for injury caused by his negligent driving because the "operation of the snowplow/salt truck is a ministerial duty which does not require the exercise of judgment or discretion, nor does it involve any special risks arising from the governmental activity." We disagree.

█ Recently, the Court has decided three cases in which the issue was whether the operation of a vehicle was a ministerial act, not a discretionary act to which sovereign immunity applies. In *Colby* v. *Boyden*, 241 Va. 125, 400 S.E.2d 184 (1991), the Court held that a city police officer pursuing a fleeing lawbreaker was immune from civil liability for negligence when he drove his police vehicle into an intersection against a red traffic light and collided with a vehicle operated by the plaintiff.

The Court said that unlike a driver "in routine traffic," a police officer engaged in vehicular pursuit is required to make "difficult judgments about the best means of effectuating the governmental purpose," and that such situations necessarily involve decisions requiring the exercise of discretion; the officer must balance personal and public safety concerns "to achieve the governmental objective." *Id.* at 129-30, 400 S.E.2d at 187.

█ Likewise, in *National Railroad Passenger Corp.* v. *Catlett Volunteer Fire Co.*, 241 Va. 402, 404 S.E.2d 216 (1991), we held that a fireman operating a fire truck en route to a fire was immune from civil liability for negligence when he drove across a railroad track without stopping and collided with a train. We said, referring to *Colby*: "We cannot logically distinguish the act of crossing a railroad track without stopping in order to extinguish a fire from running a red light in order to apprehend a traffic offender. We think both acts involve the exercise of judgment and discretion." *Id.* at 413, 404 S.E.2d at 222.

█ Conversely, in *Heider, supra*, we held that a deputy sheriff who had completed serving process at a residence was not immune from liability for negligence when he drove his vehicle from a parked position and collided with a motorcycle on the street near the residence. We said that under the circumstances of that case, "the simple operation of an automobile did not involve special risks arising from the governmental activity, or the exercise of judgment or discretion about the proper means of effectuating the governmental purpose of the driver's employer." *Heider*, 241 Va. at 145, 400 S.E.2d at 191.

In the present case, we hold that the trial court correctly ruled that the defendant Peregoy was immune from suit. The operation of the truck in snow and ice to effectuate a governmental purpose clearly involved, at least in part, the exercise of judgment and discretion by the driver. *See Lentz*, 236 Va. at 83, 372 S.E.2d at 611. For example, he had to decide whether the conditions of a particular street or

intersection required plowing or salting, or both. When spreading the salt, the defendant's activity at the time of the accident, he was required to determine the amount of salt to be applied and the area over which it should be spread. Indeed, the exercise of discretion was involved even in the initial decision to undertake the plowing and salting at all. *See Colby*, 241 Va. at 130, 400 S.E.2d at 187.

At the time of the accident, this defendant was not involved in "the simple operation" of the vehicle, *Heider*, 241 Va. at 145, 400 S.E.2d at 191, nor was he driving "in routine traffic." *Colby*, 241 Va. at 129, 400 S.E.2d at 187. Perhaps if this accident had happened as defendant was driving his truck en route to the area he was assigned to plow and salt, or if it occurred when he was returning to his Department's headquarters after completing his function of plowing and salting, he would have been engaged in "the simple operation" of the truck "in routine traffic," a ministerial act. But in this case, the conduct of driving and spreading salt combined as an integral part of the governmental function of rendering the city streets safe for public travel. Manifestly, the operation of this vehicle involved special risks arising from the governmental activity and the exercise of judgment or discretion about the proper means of effectuating the governmental purpose of the defendant's employer. *See Heider*, 241 Va. at 145, 400 S.E.2d at 191.

In *Heider*, we cited *Wynn v. Gandy*, 170 Va. 590, 197 S.E. 527 (1938), a case upon which the plaintiffs rely. An analysis of *Wynn*, however, confirms that the line we have drawn in this case is properly placed.

There, a school bus driver had taken a county bus to be serviced. As he drove the empty bus from the service station toward a county school, children began crowding around and running after the moving bus as it neared the entrance to the school building. Before the bus stopped and before any children had boarded the bus, a child was injured when he fell or was pushed to the ground beneath a wheel of the bus.

In a negligence action brought on behalf of the child against the driver, this Court first ruled that the issue of defendant's primary negligence was a question for the jury. *Id.* at 593, 197 S.E. at 528. Next, the Court considered defendant's contention that he was immune from suit because he was operating a county vehicle "which was used for the transportation of children." *Id.* at 595, 197 S.E. at 529. The Court decided that the driver was not immune and, without elaborating, merely set forth the general rule that public

officers are liable for injury resulting from their negligence in the performance of duties that do not involve judgment or discretion but are purely ministerial. *Id.*

In *Wynn*, however, unlike the present case, the defendant was engaged in "the simple operation" of the bus, approaching the place where he would embark on his governmental duty of transporting children. Similarly, the deputy sheriff in *Heider* was engaged in "the simple operation" of his vehicle, leaving the place where he had completed the performance of his governmental duty of serving process.

In *Wynn*, noteworthy is the fact that the defendant claimed immunity merely because he was operating a government vehicle "used" or utilized for the transportation of children, not because he was actually engaged in their transportation at the time. In the present case, the defendant was not just operating a government vehicle utilized for salting snow and ice. Rather, the defendant was actually performing the governmental function while operating such vehicle.

Accordingly, we conclude there is no error in the judgment below, and it will be

*Affirmed.*