**YACHT SALES INTERNATIONAL, INC., Plaintiff,**

v.

**CITY OF VIRGINIA BEACH, James K. Spore, and Ralph A. Smith, Defendants.**

Civil Action No. 2:97–cv262.

United States District Court, E.D. Virginia, Norfolk Division.

Sept. 30, 1997.

Edward James Powers, Vandeventer, Black, Meredith & Martin, Norfolk, VA, for Plaintiff.

John Robert Crumpler, Jr., Kaufman & Canoles, Norfolk, VA, Kenneth Michael Golski, Virginia Beach City Attorney's Office, Virginia Beach, VA, Richard Jay Beaver, Lawrence Steven Emmert, Office of the City Attorney, Municipal Center, Virginia Beach, VA, for City of Virginia Beach.

Kenneth Michael Golski, Virginia Beach City Attorney's Office, Virginia Beach, VA, Richard Jay Beaver, Office of the City Attorney, Municipal Center, Virginia Beach, VA, for James K. Spore, Ralph A. Smith.

## ORDER & OPINION

DOUMAR, District Judge.

This case is before the court on Plaintiff Yacht Sales International's motion for summary judgment on Counts I, II & III, and Defendants City of Virginia Beach, James K. Spore and Ralph A. Smith's cross-motion for summary judgment on those three counts.

Counts I & II allege negligence and negligence *per se* by the City of Virginia Beach in failing to dredge the Rudee Inlet to its design depth often feet mean low water. Because there are genuine issues of material fact which must be determined at trial, the court DENIES Plaintiff's motion for summary judgment on Counts I & II and DENIES Defendants' cross-motion for summary judgment on those two counts. Fed.R.Civ.P. 56(e).

In Count III, Plaintiff alleges that Defendant Spore, City Manager of Virginia Beach, was grossly negligent in his duties and that this alleged negligence led to the yacht grounding which is the subject of this case. The court finds that Spore owed no duty to the plaintiff in making budgetary recommendations as City Manager, that he was not grossly negligent, and that he is immune from suit in this case. Therefore, the court DISMISSES Count III against Spore WITH PREJUDICE.

Neither side addressed Count IV of the complaint in their motions. However, during oral argument, counsel for the Plaintiff voluntarily withdrew Count IV which alleged gross negligence by Ralph A. Smith, Director of Public Works for the City of Virginia Beach. Based on counsel's withdrawal of the count, the court DISMISSES Count IV against Smith WITH PREJUDICE.

Because both Spore and Smith have been dismissed as parties, the punitive damages claim against them is also DISMISSED WITH PREJUDICE.

Following is a summary of the basis of the court's ruling.

## I. Background

The Rudee Inlet was constructed in 1968, and the City of Virginia Beach has been responsible for maintaining the inlet since that time. Currently, the City has a dredging permit from the U.S. Army Corp of Engineers to maintain a navigational channel with a design depth of ten feet mean low water. The permit does not require that a specific depth be maintained but does state that the City "must maintain the activity authorized by th[e] permit in good condition and in conformance with the terms and conditions of th[e] permit." *See* Dredging Permit, attached as Exhibit A to Defendant's Memorandum in Opposition to Plaintiff's Motion for Summary Judgment and in Support of Defendants' Cross Motion for Summary Judgment.

On February 8, 1996, a new sixty-six foot yacht owned by Plaintiff Yacht Sales International (Yacht Sales) ran aground in the mouth of the Rudee Inlet. Captain Walker, who was in charge of the vessel, claims that the depth of the water at the site of the grounding was less than four feet due to shoaling.

There had been shoaling in the inlet for several weeks prior to the grounding, and the Coast Guard had posted notices to mariners indicating the shoaling. In light of the notice of shoaling, Captain Walker contacted the Virginia Beach Fishing Center via radio to obtain local information regarding the shoaling conditions. The manager of the Fishing Center, John Crowling, informed Captain Walker that there was severe shoaling on the north side of the channel entrance and that he should enter on the south side. Crowling based his information on a January 25, 1997 Hydrographic Survey of Rudee Inlet which was provided by the City of Virginia Beach to the Fishing Center. Captain Walker proceeded to enter the Rudee Inlet on the south side while traveling at six knots.

The vessel grounded in an area abeam of the eastern end of the south rock jetty at the mouth of the Rudee Inlet. Captain Walker attempted to back the vessel off the shoal but was unable to do so because of a following southeasterly sea. The vessel's engine stalled, and eventually it took on water. Approximately one hour after the grounding, the captain abandoned ship.

Yacht Sales claims that the grounding took place in what the hydrographic survey supposedly indicated was a sufficiently deep portion of the channel at mean low water. A survey done on February 9, the day after the incident, discloses approximately the same depths as the survey of January 25 which are deeper than four feet at what *may be* the place of the grounding. As noted above, Captain Walker claims that there was less than four feet of water at the site of the grounding. The vessel had a draft of five feet. Thus, there is a substantial question as to the place where the yacht ran aground.

Plaintiff alleges four counts of negligence against the defendants: 1) negligence by the City in failing to maintain the inlet at a safe level; 2) negligence *per se* by the City for violating the Rivers & Harbors Act, 33 U.S.C. § 403; 3) gross negligence by James Spore, City Manager, for establishing and

maintaining a policy of dredging the inlet only after it reached five feet mean low water; and 4) gross negligence by Ralph Smith, Director of Public Works, for establishing and maintaining a policy of dredging the inlet only after it reached five feet mean low water. Plaintiff asks for compensatory damages in the amount of $1,564,881.30 and punitive damages against Spore and Smith in the amount of $500,000 each.[1]

In its motion for Summary Judgment, Yacht Sales asks for Summary Judgment on Counts I, II and III. Yacht Sales argues in its Memorandum in Support of Summary Judgment that Spore's gross negligence was based on his refusal to ask the City Council to appropriate an increased budget for maintaining the inlet after substantial cuts had been made. Additionally, Yacht Sales argues that Captain Walker was not an agent of Yacht Sales but an independent contractor and that even if he were Yacht Sales' agent, he was not contributorily negligent.

The Defendants argue that while the City had a duty to maintain the inlet, it met that duty by warning mariners of the dangers of shoaling. Defendants argue that City Manager Spore does not appropriate funds, and even if his funding recommendations could be said to be appropriations, Spore has legislative immunity. The City also argues that the City Manager was not grossly negligent in making recommendations to the City Council. Finally, the City argues that Captain Walker took a risk he should not have undertaken in entering the inlet, and that if the City is at fault, comparative fault applies.

## II. Defendant Spore Is Not a Proper Party in this Case

Plaintiff alleges that Defendant Spore, who is the City Manager of Virginia Beach, was grossly negligent in declining to ask the City Council to appropriate a budget increase for the purpose of maintaining the Rudee Inlet. The court finds that this claim must fail.

This is a maritime tort and guided by the general principles of negligence law. *Consolidated Aluminum Corp. v. C.F. Bean Corp.* 833 F.2d 65, 67 (5th Cir.1987). "Under those principles, a tortfeasor is accountable only to those to whom a duty is owed." *Id.* There was no duty flowing from Spore to Yacht Sales International. " 'Duty ... is measured by the scope of the risk that negligent conduct foreseeably entails.' " *Id.* (quoting Harper, James & Gray, *The Law of Torts, Scope of Duty in Negligence Cases* § 18.2 at 655 (2d ed. 1986)). The grounding of a vessel in Rudee Inlet was not a foreseeable risk of Spore's actions in making budget recommendations. Spore's duty in making budget recommendations was owed only to Virginia Beach. Therefore, Spore cannot be held liable for negligence in this case.

Virginia case law also supports this proposition:

> There is no such thing as negligence in the abstract.... Negligence must be in relation to some person. Thus, in negligence claims *against* a public official, a distinction must be drawn between a public duty owed by the official to the citizenry at large and a special duty owed to a specific identifiable person or class of persons.... To hold a public official civilly liable for violating a duty owed to the public at large would subject the official to potential liability for every action he undertook and would not be in society's best interest.

*Marshall v. Winston,* 239 Va. 315, 389 S.E.2d 902, 905 (1990) (citations omitted) (internal quotation marks omitted).

Even assuming *arguendo* that there was a duty, this court finds as a matter of fact that Spore was not grossly negligent. Gross negligence has been defined as the "absence of slight diligence, ... the want even of scant care ... that degree of negligence as should shock fair-minded men...." *Coppage v.*

---

1. The court notes that during oral argument, Plaintiff's counsel stated that Plaintiff was asking for punitive damages in the amount of $250,000 against Spore and $250,000 against Smith. Plaintiff's complaint, however, asks for punitive damages of $500,000 against each: "Plaintiff moves this Honorable Court for a judgment and award of punitive damages against Spore and Smith *each* in the sum of FIVE HUNDRED THOUSAND AND NO/100 DOLLARS ($500,000.00)." Plaintiff's Complaint at 6 (emphasis added). Because the punitive damages claims have been dismissed with prejudice, the discrepancy between oral argument and the complaint is not relevant.

*Mann,* 906 F.Supp. 1025, 1048 (E.D.Va.1995) (citations omitted) (internal quotation marks omitted). There is no evidence in the deposition testimony submitted by Yacht Sales in support of its motion that Spore acted in a manner that was grossly negligent.

■ Furthermore, as a city employee, Spore is entitled to immunity from suit in this case. Governmental immunity has developed as part of the federal common law to protect discretionary governmental action from potentially debilitating private lawsuits. *Mangold v. Analytic Services, Inc.,* 77 F.3d 1442, 1446 (4th Cir.1996). The United States Supreme Court has recognized that federal officials have immunity from state tort claims when exercising discretionary decision making. *Westfall v. Erwin,* 484 U.S. 292, 108 S.Ct. 580, 98 L.Ed.2d 619 (1988). Although Congress has since expanded federal officials' immunity, *see* 28 U.S.C. § 2671 *et seq.; Robinson v. Egnor,* 699 F.Supp. 1207, 1214 (E.D.Va.1988), the Court's logic in *Westfall* regarding discretionary decision making still applies to this maritime tort case against a state official. Spore's decision making was the product of independent judgment, *see* Defendants' Memorandum in Opposition to Plaintiff's Motion for Summary Judgment and in Support of Defendants' Cross Motion for Summary Judgment at 9 ("the City Manager *is paid* to make these kinds of tough decisions, and recommend a budget for the City which he feels is in the best interests of the City") and therefore should be protected so that he can fearlessly, vigorously, and effectively administrate the policies of Virginia Beach. *See Westfall,* 484 U.S. at 297, 108 S.Ct. at 584.

■ Virginia case law supports immunity in this case as well. As noted above, the court finds that Spore was not grossly negligent, and under Virginia law, Spore would be immune for any acts of ordinary negligence.[2] The Virginia Supreme Court has outlined a four-factor test for determining whether state and municipal government employees are immune from suit: 1) the nature of the function the employee performs; 2) the extent of the governmental entity's interest and involvement in the function; 3) the degree of control and direction exercised by the governmental entity over the employee; and 4) whether the alleged wrongful act involved the exercise of judgment and discretion. *Stanfield v. Peregoy,* 245 Va. 339, 429 S.E.2d 11, 12 (1993). All of these factors weigh in favor of holding that Spore is immune from suit in this case.

■ First, Spore's role as City Manager and presentation of the budget were certainly essential to the City's objectives. *See Lohr v. Larsen,* 246 Va. 81, 431 S.E.2d 642, 644 (1993). Second, the City certainly had a great interest and involvement in Spore's recommendations regarding budgeting. *See id.* Both of these factors weigh in favor of sovereign immunity. *See id.* Third, while the government exercised little control over Spore's actions, when an employee is in a policy level position and is "specially trained to make discretionary decisions, the government's control must necessarily be limited in order to make maximum use of the employee's special training and subsequent experience." *Id.* 431 S.E.2d at 646. Finally, as noted above, Spore was vested with a substantial amount of discretion.

This case highlights some of the very reasons that the doctrine of sovereign immunity for government employees was developed— to ensure that citizens will be willing to take public jobs and that public officials can carry out their duties without being fearful. *See Messina v. Burden,* 228 Va. 301, 321 S.E.2d 657, 660 (1984). Accordingly, this Court finds that Spore is entitled to immunity for his acts in relation to this case, and Spore is DISMISSED as a party to this suit.

### III. Summary Judgment Is Inappropriate as to Counts I & II Because There Are Genuine Issues of Material Fact Which Must Be Determined at Trial

■ Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be granted only if "there is no genuine issue as to any material fact and the ... moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). For evidence to present a "genuine" issue of material fact, the evidence must be "such that a

---

2. Because Spore is immune from a suit for negligence in this case, the court makes no finding as to whether Spore's acts were acts of ordinary negligence.

reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Facts are deemed material if they might affect the outcome of the case. *Id.*

There are disputed matters in this case that are material to liability and apportionment: 1) whether the City's notice regarding shoaling at the Rudee Inlet was reasonable and adequate; 2) the exact place where the yacht went aground; 3) the depth of the water at the place of the grounding; 4) whether the captain was reasonable in his handling of the vessel at the time of the grounding;[3] and 5) if both parties are found to be at fault, the apportionment of damages. Therefore, judgment is not appropriate as a matter of law.

Accordingly, the court DENIES both Plaintiff's and Defendants' motions for summary judgment, and the court DISMISSES the counts against Spore and Smith WITH PREJUDICE. Finally, the court DISMISSES the punitive damages claim against Spore and Smith WITH PREJUDICE.

The Clerk of the Court is REQUESTED to mail a copy of this order to all counsel of record.

IT IS SO ORDERED.

---

**3.** The court finds that the bailment in this case was for the benefit of the yacht owner, and therefore whether the captain was negligent is a relevant and material issue.