# CIRCUIT COURT OF THE CITY OF NORFOLK

Tarsheba Brown,
by her mother
and next friend,
Vickie Brown,
and Vickie Brown

v.

Evelena Cuffee et al.

March 22, 1999

Case No. L98-1857

BY JUDGE LYDIA CALVERT TAYLOR

The above-referenced case came before the court on November 16, 1998, on the City of Norfolk's Special Plea of Non-Ownership and Non-Agency, Defendant Evelena Cuffee's Special Plea of Governmental Immunity, and Defendants' Cuffee and City of Norfolk's Motion for Protective Order. The Court dismissed with prejudice the City of Norfolk and amended the style of the matter to read as follows: "Tarsheba Brown, by her mother and next friend, Vickie Brown, and Vickie Brown v. Evelena Cuffee, Agent and Employee of Norfolk Public Schools, and School Board of the City of Norfolk, Employer." After hearing arguments by both sides, the Court took under advisement the issue of whether the defendant bus driver is entitled to the protection of the doctrine of governmental immunity.

*Factual Background*

Evelena Cuffee is a public school bus driver employed by the School Board of the City of Norfolk. On May 13, 1997, Cuffee was engaged in picking up children from their bus stops on her morning run and transporting

them to school. Tarsheba Brown ("Brown"), who was a thirteen-year-old student of Lake Taylor Middle School at the time, was among those students. *Shortly after Brown entered the bus and before she could take her seat,* Cuffee began to accelerate the bus causing Brown to fall to the floor and sustain injury.

*Legal Discussion*

## I. *Governmental Immunity*

> The doctrine of sovereign immunity serves a multitude of purposes, including but not limited to protecting the public purse, providing for smooth operation of government, eliminating public inconvenience and danger that might spring from officials being fearful to act, assuring that citizens will be willing to take public jobs, and preventing citizens from improperly influencing the conduct of governmental affairs through the threat or use of vexatious litigation.

*Messina v. Burden*, 228 Va. 301, 308, 321 S.E.2d 657 (1984). Because the government acts through people, sovereign immunity must extend to some of those people. *Id.* If sovereign immunity is limited to the state, "the majority of the purposes for the doctrine will remain unaddressed." *Id.*

The seminal case in Virginia regarding whether individual employees of the government are entitled to the protection of the doctrine of governmental immunity is *Messina v. Burden*, 228 Va. 301, 321 S.E.2d 657 (1984). In *Messina*, the Virginia Supreme Court distinguished between "officials at the very highest levels of government who have generally been accorded absolute immunity" and lesser ranking governmental officials whose immunity must be assessed on a case-by-case basis. *Id.* at 309-10. To assist in that assessment, the Court reiterated the four-part test adopted by it in *James v. Jane*, 221 Va. 43, 282 S.E.2d 864 (1980).

The factors to be considered when determining the entitlement of individual public employees to governmental immunity are: (1) the nature of the function performed by the employee; (2) the extent of the state's interest and involvement in the function; (3) the degree of control and direction exercised by the state over the employee; and (4) whether the act complained of involved the use of judgment and discretion. *Messina*, 228 Va. at 313. Therefore, a defendant employee is clothed with governmental immunity when (1) she performs a governmental function; (2) the state has a strong interest and involvement in that function; (3) the state exercises control over

her; and (4) she must use her own judgment and discretion in performing the function. When a defendant, public employee meets this four-part test and is clothed with governmental immunity, a plaintiff must plead and establish that the public employee was guilty of gross negligence. *See Colby v. Boyden*, 241 Va. 125, 130, 400 S.E.2d 184, 187 (1991) (citing *James*, 221 Va. at 53, 267 S.E.2d at 113.).

## II. *Governmental Immunity and Employees of School Boards*

The doctrine of governmental immunity has been applied to protect employees of school boards. *See Lentz v. Morris*, 236 Va. 78, 372 S.E.2d 608 (1988); *Bank v. Sellers*, 224 Va. 168, 294 S.E.2d 862 (1982). In *Lentz*, a student and his mother sought damages for personal injuries sustained by the student during a physical education class. They claimed the teacher in charge of the class had been negligent in his supervision. The Virginia Supreme Court affirmed the trial court's determination that the teacher was immune from liability based upon simple negligence. *Lentz*, 236 Va. at 82, 372 S.E.2d at 610. The Court held that because (1) teaching is a "vitally important public function"; (2) the school board was a governmental entity that employed the teacher and had an "official interest and direct involvement in the function of student instruction and supervision"; (3) that government entity, the school board, "exercises control and direction over the [teacher] through the school principal;" and (4) "supervision and control of a physical education class [by a teacher], including the decision of what equipment and attire is to be worn by the student participants, clearly involves, at least in part, the exercise of judgment and discretion by the teacher," the *Messina* four-part test mandated immunity for the teacher. *Lentz*, 236 Va. at 82-83, 372 S.E.2d at 610-611.

## III. *Test for Governmental Immunity as Applied to the Instant Case*

Based on *Messina* and *Lentz*, Defendant is entitled to governmental immunity. The School Board of the City of Norfolk, which employs Defendant, is a governmental agency entitled to immunity for tortious injury. *See, Kellam v. School Bd. of the City of Norfolk*, 202 Va. 252, 256, 117 S.E.2d 96, 99 (1960). Additionally, the instant case satisfies the four-prong test enunciated in *Messina*. Therefore, because Defendant works for an immune governmental entity and satisfied the *Messina* test, she is eligible for the protection afforded by the doctrine. *See, Messina*, 228 Va. at 312.

First, transporting children to school aboard a school bus is a governmental function. The Virginia Supreme Court has made a distinction

between merely operating a governmental vehicle used for the governmental function of transporting children and "actually performing the governmental function while operating such a vehicle." *Stanfield v. Peregoy*, 245 Va. 339, 345, 429 S.E.2d 11, 14 (1993). In the former instance, the Court has held that the governmental function of transporting children does not begin until the bus driver begins loading the school bus. *See, Wagoner v. Benson*, 256 Va. 260, 505 S.E.2d 188 (1998). ("The loading process, that is moving the students from the road onto the bus, involve[s] a number of steps … including turning on flashing warning lights and extending the mechanical stop sign and the metal safety gate, all of which remain engaged until all students are inside or have 'loaded onto' the school bus.") Hence, driving a school bus does not become a governmental function until the bus driver "embarks on his governmental duty of transporting children" by loading the bus. *Stanfield*, 245 Va. at 344. In the case at bar, Defendant had begun to load the bus. Therefore, Defendant had embarked on her governmental duty and thereby was performing a governmental function satisfying the first prong of the *Messina* test.

Second, the extent of the state's interest and involvement in the transporting children to school aboard a school bus is great. The Code provides that school boards may provide for the transportation of pupils and empowers school boards to promulgate regulations pertaining to that transportation. *See* Va. Code § 22.1-176. Also, the Code outlines the requirements for persons employed to drive school buses and requires the Board of Education to develop and promote the implementation of a training program for school bus drivers. *See* Va. Code §§ 22.1-178, 22.1-181.

Third, the school board exercises a large amount of control and direction over operators of school buses. This control and direction is evidenced by the same factors that were cited to satisfy the second prong of the *Messina* test. The school board is required by the Code to control and direct school bus drivers by requiring of them yearly medical examinations, yearly submission of driving records from the Department of Motor Vehicles, a proper driver's license, and *inter alia*, that the bus driver be at least eighteen years of age. Moreover, individuals applying to be school bus drivers, as well as current bus drivers, must complete a training program. Va. Code § 22.1-181.

Fourth, the act of transporting children to school aboard a school bus involves the use of judgment and discretion. The Virginia Supreme Court has distinguished between "the simple operation" of a vehicle "in routine traffic," i.e., merely driving a school bus, which is a ministerial act, and "the transportation of students to public school" aboard a school bus, which involves judgment and discretion. *See, Stanfield*, 245 Va. 343-45 (analyzing

*Colby v. Boyden*, 241 Va. 125, 400 S.E.2d 184 (1991) (holding that pursuit of a fleeing suspect by a city police officer was an act involving judgment and discretion); *National R.R. Passenger Corp. v. Catlett Vol. Fire Co.*, 241 Va. 402, 404 S.E.2d 216 (1991) (holding that a fire fighter en route to a fire is performing an act that requires judgment and discretion); *Heider v. Clemons*, 241 Va. 143, 145, 400 S.E.2d 190, 191 (holding that a police officer driving after serving process was not engaged in an act involving judgment and discretion)). In the instant case, Defendant's act of pulling away from the bus stop involved judgment and discretion. The act of supervising and controlling the children aboard the bus was superimposed on Defendant's decision regarding how much attention to devote to supervision of the passengers versus the actual operation of the school bus, elevating the act from a ministerial one to one involving judgment and discretion.

## IV. *Limited Abrogation of Governmental Immunity in Virginia by Statute*

The issue remains, however, whether the bus driver's immunity, along with that of the School Board, has been abrogated to a limited degree by statute in Virginia. Virginia Code § 22.1-194 clearly abrogates the School Board's immunity in explicit terms:

> In case the locality or the school board is the owner, or operator through medium of a driver of, or otherwise is the insured under the policy upon, a vehicle involved in an accident, the locality or *school board shall be subject to action* up to, but not beyond, the limits of valid and collectible insurance in force to cover the injury complained of or, in cases set forth in subsection D of § 22.1-190, up to but not beyond the amounts of insurance required under subsection A of § 22.1-190 and *the defense of governmental immunity shall not be a bar to action or recovery*. In cases of several claims for damages arising out of a single accident involving a vehicle, the claims of pupils and school personnel, excluding driver when not a pupil, shall be first satisfied. In no event, except where approved self-insurance has been provided pursuant to § 22.1-190(D), shall school funds be used to pay any claim or judgment or any person for any injury arising out of the operation of any such vehicle. The locality or school board may be sued alone or jointly with the driver, provided that in no case shall any member of a school board be liable personally in the capacity of school board member solely.

Virginia Code § 22.1-194 (emphasis added). However, the Virginia Supreme Court recently declined to decide the issue of whether that statute abrogates immunity to the same extent for the driver himself or herself. In a footnote, in *Wagoner v. Benson*, 256 Va. 260, 262, n.2 (1998), the Court stated, "For the purposes of this appeal, we need not distinguish between the availability of the sovereign immunity defense for Benson and the School Board." *Id.*

"A public school board is entitled to sovereign immunity from liability for injuries resulting from the school board's simple negligence unless that immunity is abrogated by statute." *Wagoner v. Benson*, 256 Va. 260, 505 S.E.2d 188, 189 (1998) (citing *Kellam v. School Bd. of the City of Norfolk*, 202 Va. 252, 255, 117 S.E.2d 96, 98 (1960)). The language of Code § 22.1-194 abrogates the immunity of a locality or school board owning or operating a vehicle up to the amount of insurance required under Section A of § 22.1-190 but makes no mention of abrogating immunity for the *employees* of those entities. Because § 22.1-194 does not contain a word about employees, it does not abrogate the immunity of the bus driver herself but only that of the school board.

Not only does the language of the statute abrogate immunity to the extent of insurance for the locality or school board only and not for its drivers, but that difference, in treatment by the General Assembly, is also bolstered by the general philosophical distinction between the type of immunity afforded the state and that afforded its employees. As Justice Poff wrote in *Messina*:

> The two doctrines are akin but different in concept and effect. The doctrine of sovereign immunity, rooted originally in the tenuous theory that the King of England could do no wrong, finds its most legitimate justification in the right of government to protect its assets, owned in common by the people at large, and to promote the welfare and safety of the body politic by assuring orderly administration of governmental functions.
>
> On the other hand, the primary purpose of the doctrine of public servant immunity, while related to those underlying the doctrine of sovereign immunity, is to encourage citizens, including those of modest means, to enter government service and, once employed, to carry out their assigned missions responsibly without fear of personal liability for accidental injuries resulting from acts or omissions committed in the exercise of their discretionary powers.

*Messina*, 228 Va. at 314 (Poff, J., concurring).

Moreover, the Supreme Court of Virginia, in *Hyman v. Glover*, set out two important rules of construction to be observed "where a statute is in derogation of the common law." *Hyman v. Glover*, 232 Va. 140, 143, 348 S.E.2d 269, 271 (1986).

First, "[t]he common law is not to be considered as altered or changed by statute unless the legislative intent be plainly manifested." *Hannabass v. Ryan*, 164 Va. 519, 525, 180 S.E. 416, 418 (1935). Second, "[s]tatutes in derogation of the common law are to be strictly construed and not to be enlarged in their operation by construction beyond their express terms." *C. & O. Railway v. Kinzer*, 206 Va. 175, 181, 142 S.E.2d 514, 518 (1965).

*Id.* Here, in § 22.1-194, there is no plain indication of the General Assembly's intent to abrogate any immunity except that of a locality or school board where an insured vehicle that it owns or operated is involved in an accident. Further, it would be inconsistent with strict construction and an enlargement of the plain meaning of the statute to extend that abrogation to include bus drivers.

Given the difference in purpose of the two doctrines of sovereign immunity, as well as the legal maxim that "legislative abrogation of the common law doctrine of sovereign immunity must be explicit and will not be found by implication," *Colby*, 241 Va. at 132, 400 S.E.2d at 189 (citing *Hyman v. Glover*, 232 Va. 140, 143, 348 S.E.2d 269, 271 (1986)), the abrogation enunciated in § 22.1-194 should not be applied to the Defendant bus driver.

*Conclusion*

Defendant bus driver, as an employee of an immune governmental entity that also satisfies the four-prong *Messina* test, is entitled to the defense of sovereign immunity. The Code section abrogating that immunity to a limited extent for school boards does not abrogate immunity for employees, such as Defendant bus driver. Therefore, because Plaintiff's Motion for Judgment seeks to recover damages from Defendant bus driver based only in simple negligence, Defendant's Special Plea is sustained and the claim against her is dismissed with leave to amend to allege gross negligence, if so desired, within ten days. The School Board itself remains a defendant up to the amount of its insurance, in accordance with the limited abrogation of immunity for school boards. Virginia Code § 22.1-194.